UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OLGA MORELIA GARCIA MONTALBAN,<br><br>             Petitioner,<br><br>      -against-<br><br>KENNETH GENALO, *Field Office Director of Enforcement and Removal Operations, New York Field Office, Immigration and Customs Enforcement*; TODD LYONS, *Acting Director, United States Immigration and Customs Enforcement*; KRISTI NOEM, *Secretary, U.S. Department of Homeland Security*; PAMELA BONDI, *United States Attorney General*; U.S. DEPARTMENT OF HOMELAND SECURITY, *and* EXECUTIVE OFFICE FOR IMMIGRATION REVIEW,<br><br>             Respondents. | **ORDER**<br>26 Civ. 1808 |

EDGARDO RAMOS, United States District Judge:

Olga Morelia Garcia Montalban is a 29-year-old asylum seeker from Honduras. Doc. 1 ¶ 1, 25. She entered the United States on December 16, 2023 and was immediately detained by Immigrations and Customs Enforcement ("ICE"). Doc. 1 ¶ 2. Two days later, on December 18, 2023, she was released on her own recognizance. *Id.*; Doc. 36-1.[1] In 2024, Garcia Montalban filed an asylum application, which is still pending. Doc. 1 ¶ 26.

Garcia Montalban was arrested by the New York City Police Department on February 19, 2026, and charged with misdemeanor assault. Docs. 27 at 2; *see also* 27-4. According to Garcia Montalban's own declaration, she is a resident of Ramada Women's shelter, and the charges

---

[1] On December 18, 2023, Garcia Montalban was personally served with Form I-200, a Warrant for Arrest of Alien, Form I-200A, an Order for Release on Recognizance, Form I-286, Notice of Custody Determination, Form I-862, and a Notice to Appear. Doc. 37 at 2. The Order of Release on Recognizance required that Garcia Montalban alert ICE to any changes to her address and that she not commit any crimes. *Id*.

stemmed from a conflict with another resident of the shelter.  Doc. 38-5 at 2–3.  On February 20, 2026, ICE lodged a detainer, which was not honored.  Docs. 27 at 2; 27-5.  Though the detainer "stated that she was to be taken in custody pursuant to 8 U.S.C. § 1226(c)(1)(E) (Laken Riley Act)," ICE later determined that Garcia Montalban's charges "do not trigger mandatory detention under the Laken Riley Act."  Doc. 27 at 2, n.2.[2]

According to the declaration of Supervisory Detention and Deportation Officer Roberto Rodriguez,[3] on March 1, 2026, ICE's Office of the Principal Legal Advisor ("OPLA") "reviewed [Garcia Montalban]'s immigration and criminal history . . . [and] determined that [she] was amenable to detention."  Doc. 37 at 4.  OPLA referred the issue to ICE's Enforcement and Removal Operations ("ERO") who "made a separate review of [Garcia Montalban] and specifically noted her manner of entry without inspection at the border, which makes her an applicant for admission under INA 235(b) [8 U.S.C. § 1225(b)].  ERO also noted her recent criminal history in its assessment of [Garcia Montalban] which changed her circumstances and violated her conditions of release."  *Id.*

On March 4, 2026, after Garcia Montalban appeared for her first master calendar hearing before an immigration judge at 26 Federal Plaza, she was arrested by ICE.  Docs. 27 at 2; 27-7; 37 at 4.  According to Rodriguez,

> At the time of the encounter, [Garcia Montalban] refused to comply with lawful instructions.  [Garcia Montalban] was combative and resistive to the officers as they attempted to effectuate her arrest.  Furthermore, court observers present on the scene became agitated and began trying to pull [Garcia Montalban] away from the officers and

---

[2] The detainer additionally stated that Garcia Montalban was to be taken into custody because she "otherwise poses a risk to national security, border security, or public safety."  Doc. 27-5 at 1.

[3] The declaration is based on "personal knowledge, [his] review of [Garcia Montalban's] administrative file, accessible records from the Executive Office for Immigration Review, and ICE electronic records and databases" as well as "consultation with colleagues, including the arresting officer, examination of medical intake documents, [and] photos taken contemporaneously [with the arrest]."  Doc. 37 at 1, 4.

held onto [her].  After a period of time, the arrest was effectuated.  [Garica Montalban] was then advised about the reason for her detention, specifically her criminal record,  . . .

Doc. 37 at 5.  However, according to New York Legal Assistance Group staff member Benjamin Remy who was present at 26 Federal Plaza and observed Garcia Montalban's detention:

> To my recollection, the federal agents did not identify themselves nor explain why they were stopping Ms. Garcia Montalban.  Ms. Garcia Montalban appeared confused and frightened.  She did not appear to understand why she was being stopped.  I did not witness Ms. Garcia Montalban verbally or physically resisting the arresting federal agents at any point. . . . I saw two court observers grab onto Ms. Garcia Montalban's back and arms to try to pull her away from the federal agents.  The federal agents responded violently and, within seconds of this encounter, ripped Ms. Garcia Montalban out of the doorway.  From what I saw it appeared that the agents threw Ms. [Garcia] Montalban against the wall on the righthand side of the hallway, and then onto the floor.  I did not hear the agents state that Ms. Garcia Montalban was resisting arrest.  Nor did I hear them tell Ms. Garcia Montalban, in English or Spanish, to stop resisting.  I heard Ms. Garcia Montalban screaming and crying.  From what I could see, she appeared to be injured and in pain.  I saw the masked agents drag Ms. Garcia Montalban down the remainder of the hallway and throw her through a stairwell door at the end of the hallway.  I then saw the agents cover the small glass window on the door itself, hiding themselves and Ms. Garcia Montalban from view.  Over the past nine months or so, I estimate that I have witnessed approximately one hundred detentions by federal agents of individuals attending their routine immigration court hearings . . . Ms. Garcia Montalban's arrest falls on the exceptionally violent side of the arrests that I have observed, particularly because she made no attempt to resist arrest.

Doc. 38-4 at 2–3.

## I.      PROCEDURAL BACKGROUND

Garcia Montalban filed a petition for the writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 on March 4, 2026.  Doc. 1.  On March 5, 2026, the Court issued an Order to Answer, directing the Respondents to file a letter indicating, *inter alia*, (1) whether the Petitioner was located in the Southern District of New York at the time that the Petition was filed, (2) the statutory provision(s) under which the Respondents assert the authority to detain the Petitioner, and (3) if the asserted basis for the Petitioner's detention is 8 U.S.C. § 1225(b)(2)(A), whether

there is any basis to distinguish this case from this Court's decision in *Liu v. Almodovar*, 25-cv-9256 (S.D.N.Y. Dec. 2, 2025).  Doc. 9.

On March 9, 2026, the Respondents filed a letter response to the Court's March 5, 2026 order.  Doc. 27.  In that letter, they conceded that venue was proper because Garcia Montalban was in the Southern District of New York when the Petition was filed; asserted that the basis for Garcia Montalban's detention was 8 U.S.C. § 1225(b)(2)(A); acknowledged that, "[a]s to the statutory question of which detention provision governs Petitioner's detention—8 U.S.C. § 1226 or 8 U.S.C. § 1225(b)(2)(A)—the instant case is not materially distinguishable from the Court's decision in *Liu*"; and argued that even if *Liu* controls the statutory question, Garcia Montalban should be granted a bond hearing before an immigration judge, rather than outright release because of her arrest and ICE's issuance of a detainer.  *Id.* at 1–3.

On March 10, 2026, the Court issued an Order granting in part and denying in part Garcia Montalban's petition for *habeas corpus*.  Doc. 28.  The Court found that Garcia Montalban was detained pursuant to § 8 U.S.C. § 1226, but that "the fact that ICE lodged a detainer against Garcia Montalban following her arrest suggests that ICE may have made an individual determination prior to her detention."  *Id.* at 2–3.  Accordingly, the Court ordered that the Government provide Garcia Montalban a bond hearing before an immigration judge within seven days in which the Government would "bear the burden to prove, by clear and convincing evidence, that the petitioner is a danger to the community or a risk of flight."  *Id.* at 4–5.

Later on March 10, 2026, Garcia Montalban filed a motion for reconsideration of the Court's March 10, 2026 order to "prevent manifest injustice."  Doc. 29 at 1.  Garcia Montalban requested that she be released immediately as no individualized assessment had been made or, in

the alternative, that the Court conduct its own bond hearing, rather than ordering one before an immigration judge. *Id.*, Doc. 32. The Government responded arguing that the request was unnecessary and that a bond hearing had already been scheduled for Monday, March 16, 2026. Doc. 31. The parties appeared before the Court on March 13, 2026, for oral argument. *See* Docs. 33–34. At oral argument, counsel for the Government could not provide information as to whether ICE had made an individualized determination about Garcia Montalban's flight risk or danger to the community prior to her arrest, beyond looking to the existence of pending charges and the detainer. Accordingly, at the hearing, the Court requested that the Government submit evidence that ICE made such an individualized assessment prior to arresting Garcia Montalban. The Court also directed the Government to stay Garcia Montalban's upcoming bond hearing before an immigration judge until a further order of this Court. The Court issued an order later that day memorializing the requests and stay of the bond hearing. Doc. 34.

Despite the Court's March 13 order, on March 16, 2026, Garcia Montalban's bond hearing before an immigration judge was conducted. *See* Docs. 35, 36, 38. Garcia Montalban's counsel were not alerted to the hearing, so they were not present and accordingly could not present evidence concerning Garcia Montalban's flight risk or danger to the community. *See* Doc. 35. According to the Government, the bond hearing was held because the immigration judge "was not aware" that the Court's March 13 order stayed the hearing. Doc. 36 at 2. However, setting aside the Court's March 13, 2026 order, the burden at the bond hearing appeared to be in violation of the Court's March 10, 2026 order. The March 10, 2026 order required that the Government bear the burden to show by clear and convincing evidence that Garcia Montalban was a danger to the community or a flight risk; however, the Order of the

5

Immigration Judge indicated that bond was denied because Garcia Montalban "has failed to establish that she is not a danger to the community nor that any amount of bond would mitigate her flight risk." Doc. 36-3; Doc. 28.

On March 17, 2026, the parties called chambers, alerting the Court that the bond hearing occurred the day before. Later that day, Garcia Montalban filed a letter with the Court noting that at the bond hearing, the immigration judge caused Garcia Montalban to show that she was not a flight risk or a danger to the community, rather than require the government to bear the burden to demonstrate that she was a flight risk or a danger. Doc. 35.[4]

Also, later that day, the Government responded to the Court's March 13, 2026 order by filing a letter brief and exhibits concerning whether an individualized determination had been made concerning Garcia Montalban's flight risk or danger to the community prior to her arrest by ICE. Docs. 36, 37. The Government's letter highlights additional facts, including: that Garcia Montalban was initially detained by ICE when she entered the United States in 2023; that her initial order of recognizance mandated that she not commit any crimes and alert ICE to changes in her address; that on March 1, 2026, OPLA reviewed Garcia Montalban's immigration and criminal history and determined that she "was amenable to detention because of her criminal history and manner of entry"; and that, also on March 1, 2026, ERO "noted her manner of entry . . . and also noted her recent criminal history in its assessment, which changed her circumstances and violated her conditions of release . . . [and] determined that it would detain" her. Doc. 36 at 1–2. The Government argues that "the above facts . . . demonstrate that ICE made an

---

[4] The information in this initial letter was based on Garcia Montalban's own understanding of the hearing, as counsel was not present. Doc. 35. The letter also stated that, "the IJ may have denied bond for lack of jurisdiction," however, that allegation appears to have been abandoned in later briefing after counsel was able to obtain a recording of the hearing. *Id.*; *see* Doc. 38 at n.4.

individualized determination to detain [Garcia Montalban] and support the Court's [March 10] order that the appropriate remedy is a bond hearing . . ." *Id.* at 2.[5]

Garcia Montalban filed a letter response on March 18, 2026. Doc. 38. In short, she argues that the evidence proffered by the Government is insufficient to demonstrate that an individualized determination occurred prior to her detention because: the review "consisted of little more than confirmation that she entered without inspection and that she has criminal charges" which is a "check-box style review"; reference to criminal charges or prior arrests is "insufficient to justify detention without full consideration of dangerousness and risk of flight"; and the additional facts establish that the ERO determined Garcia Montalban's detention was governed by 8 U.S.C. § 1225(b), a mandatory detention scheme not requiring an individualized assessment. *Id.* at 1–2. She further argues that the March 16 bond hearing before an immigration court violated the Court's previous orders, and that this disregard for federal court orders is part of a "nationwide pattern of noncompliance" by the Government. *Id.* at 2–7.

## II. DISCUSSION

First, the Court examines whether it should grant Garcia Montalban's motion to reconsider the March 10, 2026 order, which denied immediate release and required that the Government provide her a bond hearing before an immigration judge by March 17, 2026. Doc. 28. Generally, the Court "should not revisit a prior order unless there is 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Premium Sports Inc. v. Connell*, No. 10 CIV. 3753 KBF, 2012 WL 2878085,

---

[5] The Government's letter also asserts that the Court should grant a bond hearing before an immigration judge due to Garcia Montalban's multiple changes of address. Doc. 36 at 2. The Court does not address this argument as the record does not demonstrate that that ICE considered this prior to detaining Garcia Montalban.

at *1 (S.D.N.Y. July 11, 2012) (citing *Virgin Atlantic Airways, Ltd. v. National Mediation Board,* 956 F.2d 1245, 1255 (2d Cir.1992)). The decision to grant or deny a motion for reconsideration is within "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (citation omitted).

In the instant case, Garcia Montalban argues that reconsideration is required to prevent "manifest injustice," Doc. 29 at 1, while the Government argues the request is a "veiled attempt to persuade the Court to overturn its already well-reasoned decision," Doc. 31 at 2. After the Court's March 10 order, new evidence has been offered in the record which can be considered, including (1) the Government's additional documentation concerning whether an individualized assessment of Garcia Montalban's flight risk or danger to the community occurred prior to her arrest, *see* Docs. 36, 37; and (2) additional information concerning the proceedings in front of an immigration judge, *see* Docs. 34, 36, 38. Accordingly, the Court grants Garcia Montalban's motion to reconsider the March 10, 2026 order.

Garica Montalban argues that the Court should order her immediate release as the Government has failed to establish that an individualized assessment of her flight risk or danger to the community was performed prior to her arrest. Doc. 38 at 1–2. In the alternative, she requests that the Court conduct its own bond hearing rather than ordering one before an immigration judge. *Id.* at 6. Meanwhile, the Government argues that "ICE made an individualized assessment to detain" Garcia Montalban and that the Court should order a new bond hearing before a different immigration judge "stipulating that [the new] judge not review the previous proceedings." Doc. 36 at 2.

As the Court has previously explained, a bond hearing is only appropriate when there was an individualized determination concerning a noncitizen's flight risk or danger to the community prior to their detention. *See* Doc. 28 at 3. As the Court previously found in this case, the existence of a detainer lodged less than two weeks before Garcia Montalban's arrest by ICE, is evidence that "ICE may have made an individualized determination prior to her detention." *Id*. However, the mere existence of a detainer alone or the review of a criminal record is not sufficient to conclude that ICE conducted an individualized assessment of the petitioner's risk of flight or danger to the community. *See Kelly v. Almodovar*, No. 25 CIV. 6448 (AT), 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025) ("[M]ere 'review' of a RAP sheet is not tantamount to an individualized assessment of a suspect's flight risk or dangerousness."); *see Quinteros Moran v. Joyce,* No. 25 CIV. 9645 (GBD), 2025 WL 3632895, at *4 (S.D.N.Y. Dec. 15, 2025*)* (finding that where the record revealed that ICE lodged a detainer and the petitioner had ten encounters with law enforcement in three years, "[t]he current record does not support a conclusion that the Government made an individualized determination to revoke Petitioner's bond in support of his detention . . . [though] it may have had reasonable grounds to do so."). Accordingly at oral argument, the Court instructed the Government to submit evidence as to whether an individualized determination of Garcia Montalban occurred prior to her arrest. *See* Doc. 34.

However, the evidence that the Government produced does not demonstrate that the Government conducted an individualized determination of Garcia Montalban's flight risk or danger to the community. The Government proffers evidence that, three days prior to her arrest at ICE, both the OPLA and ERO reviewed Garcia Montalban's case and based on her immigration and criminal history, determined she could be detained. *See* Doc. 37 at 4 (stating

that the OPLA "reviewed [Garcia Montalban]'s immigration and criminal history . . . [and] determined that [she] was amenable to detention"); *id* (stating that the ERO "made a separate review of [Garcia Montalban] and specifically noted her manner of entry without inspection at the border, which makes her an applicant for admission under INA 235(b) [§ 1225(b)]. ERO also noted her recent criminal history in its assessment of Petitioner which changed her circumstances and violated her conditions of release."). However, in detailing these decisions, the Government does not indicate that the individualized determination was based on anything other than erroneously concluding that Garcia Montalban's detention was mandatory under 8 U.S.C. § 1225(b), or merely reviewing Garcia Montalban's pending criminal charges. *See id.* The Court has already found that Garcia Montalban's detention was pursuant to 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b). Doc. 28. Further, mere awareness of pending criminal charges is not sufficient to constitute an individualized determination as to Garcia Montalban's flight risk or danger to the community. *See Kelly*, 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025) ("[M]ere 'review' of a RAP sheet is not tantamount to an individualized assessment of a suspect's flight risk or dangerousness").[6]

Some courts, including this one earlier in the litigation, have found that, where the "paucity of the record" is not conclusive as to whether an individualized determination occurred or not, the appropriate remedy is a bond hearing before an immigration judge. *Quinteros Moran*,

---

[6] Further, the Government's decisions to detain Garcia Montalban appear to premised, at least in part, on the erroneous understanding that a mandatory detention scheme applies. *See* Doc. 37 at 4 (stating that the ICE ERO determined that Garcia Montalban was an applicant for admission under 8 U.S.C. § 1225(b)); Doc. 27 at 2 (stating that the detainer authorized detention pursuant to the Laken Riley Act, but that ICE has since determined that mandatory detention was not required under the Laken Rile Act in this case). Asserting detention pursuant to a mandatory detention scheme is "precisely the opposite of an exercise of discretion, which entails some sort of judgment." *Sidqui v. Almodovar*, No. 25-CV-9349 (VSB), 2026 WL 251929, at *14 (S.D.N.Y. Jan. 30, 2026).

2025 WL 3632895, at *4; *see* Doc. 28.  However, in the instant case, the Court provided the Government additional opportunity to fill in the record.  *See* Doc. 34.  Even with the added documentation, there is not a record of an individualized determination as to Garcia Montalban's flight risk or danger to the community prior to her arrest; accordingly, the Court grants the Petition, and orders immediate release of Garcia Montalban from custody.[7]

### III.    CONCLUSION

For the reasons stated above, Respondents are ordered to immediately release Garcia Montalban from custody.  Respondents shall file a letter on the docket certifying compliance with this Order by no later than March 23, 2026 at 12:00 p.m.

IT IS FURTHER ORDERED that Garcia Montalban "shall not be re-detained without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where the government will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a)." *Gholam Ali Ahmadi v. Almodovar*, No. 26-CV-274 (VSB), 2026 WL 621827, at *3 (S.D.N.Y. Mar. 5, 2026) (quoting *Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511, at *17 (E.D.N.Y. Oct. 6, 2025)).  *Cf. Rueda Torres v. Francis*, No. 25-CV-8408 (DEH), 2025 WL 3168759, at *6 (S.D.N.Y. Nov. 13, 2025).

IT IS FURTHER ORDERED that the Government is ENJOINED from denying bond to Garcia Montalban in any subsequent proceeding on the basis that she must be detained pursuant to 8 U.S.C. § 1225(b) and from invoking in that proceeding the automatic stay provision at 8

---

[7] As the Court orders release, it does not examine Garcia Montalban's alternate request that the Court conduct a bond hearing itself, as opposed to an immigration judge.  *See* Doc. 38 at 7.

C.F.R. § 1003.19(i)(2), absent a change in controlling law. *Gholam Ali Ahmadi*, 2026 WL 621827, at *3; *Rueda Torres*, 2025 WL 3168759, at *6.

SO ORDERED.

Dated:    March 20, 2026
            New York, New York

_____
EDGARDO RAMOS
United States District Judge